# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVELYN FINNEY as administrator of the estate of CLIFFORD FINNEY** | Civ. No. 4:09-1751 |
| **Plaintiff** | |
| v. | |
| **SUPERINTENDENT PAUL A. PALAKOVICH, et al.,** | J. Rambo |
| **Defendants** | |

## MEMORANDUM

Before the court is Defendants MHM Correctional Services ("MHM") and Dr. Eugene Polmueller's renewed motion to dismiss, (Doc. 81), Plaintiff's second amended complaint, (Doc. 80), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion will be granted in part and denied in part.

## I.   **Background**[1]

### A. **Parties**

Plaintiff, Evelyn Finney, is the mother and Administratrix of the estate of Clifford Finney.[2] (Compl. ¶ 1.) Finney was a prisoner housed at all times relevant to this complaint at SCI-Rockview and SCI-Smithfield.[3] (*Id.* ¶¶ 12, 13.)

---

[1] As required for a motion to dismiss, the court accepts as true all well pled facts alleged in the complaint.

[2] For purposes of this memorandum, "Finney" is a reference to Clifford Finney.

[3] The complaint does not state when Finney was transferred to Smithfield, only that in 2007
(continued...)

Defendants who brought this motion are MHM and Dr. Eugene Polmueller. MHM is a private company providing mental health services to SCI-Smithfield. Dr. Polmueller is the director of psychiatry at SCI-Smithfield, and is employed by MHM. (*Id.* ¶ 5.)

### B. Facts

In June of 2007, Finney was threatening to harm himself and was placed in the Psychiatric Observation Cell ("POC") from June 14, 2007, to June 19, 2007. (*Id.* ¶ 41.) On June 30, 2007, Finney again threatened to harm himself and was placed back in the POC until July 6, 2007. (*Id.* ¶ 42.) On July 6, 2007, Finney was involuntarily committed to the Mental Health Unit ("MHU") at Rockview. (*Id.* ¶ 43.) He was kept there until July 25, 2007, during which time he was considered severally mentally disabled. (*Id.*) Finney was again in the POC from July 31, 2007, to August 20, 2007, after harming himself with a razor. (*Id.* ¶ 44.) The next month, from September 5, 2007, through September 11, 2007, Finney was in the POC after attempting to hang himself. (*Id.* ¶ 45.) In October, Finney was hearing voices which told him to hang himself and was admitted to the POC from October 2, 2007, to October 7, 2007. (*Id.* ¶ 46.)

On November 2, Finney's mother called a counselor and told her she had received a note from her son stating "If I'm found dead the officers did it." (*Id.* ¶ 47.) This same month Finney was placed back in the POC from November 21, 2007, to November 28, 2007. (*Id.* ¶ 48.) He was placed back in the POC because he

---

³(...continued)
he was in Rockview, but by December 2, 2007, he was found dead at Smithfield. The court will accept as true Plaintiff's averment that at all times relevant to this litigation Finney was incarcerated at Smithfield, unless it is otherwise specifically noted that he was at Rockview.

planned on using his bed sheets to commit suicide and because he refused to take his psychiatric medications. In addition, he was still occasionally hearing voices. (*Id.*)

On November 28, 2007, Finney was released to the Restricted Housing Unit ("RHU") despite telling the releasing psychiatrist that he was not ready to go and that if he was released he would hurt a correctional officer. (*Id.* ¶ 49.) This psychiatrist believed Finney was being manipulative. (*Id.*) This same day, he was placed on fifteen minute observation in the RHU. On December 1, 2007, he was taken off fifteen minute observation by the guards but was not seen by a psychiatrist. (*Id.*)

On December 2, 2007, at approximately 2 p.m., Finney was found dead in his cell after hanging himself with a bed sheet. (*Id.* ¶¶ 15, 50.) A search of his cell uncovered nine pills– eight psychiatric medications and one Benadryl. (*Id.* ¶ 50.)

### C. Procedural History

On September 10, 2009, Plaintiff filed the original complaint. (Doc. 1.) Plaintiff amended the complaint and re-filed it on September 16, 2009. (Doc. 6.) On December 4, 2009, Defendants MHM and Dr. Eugene Polmueller filed a motion to dismiss Plaintiff's amended complaint.[4] (Doc. 25.) However, no supporting brief was filed and on December 29, 2009, the court issued a rule to show cause why the motion should not be deemed withdrawn. (Doc. 30.) On January 12, 2010, Defendants responded to the rule to show cause and attached a proposed brief, (Doc. 40), which the court accepted on January 28, 2010, (Doc. 46).

---

[4] Former Defendant Dr. Robert Mellon was also a party to this motion but was later dismissed by stipulation of the parties. (Docs. 51, 53.)

On February 2, 2010, Plaintiff filed a brief in opposition to Defendants' motion to dismiss. (Doc. 48.) On February 19, 2010, Defendants' filed their reply brief. (Doc. 56.) At this time, the motion was ripe for disposition. However, on April 30, 2010, Plaintiff filed a motion requesting permission to file a second amended complaint and brief in support. (Docs. 70, 71.) Defendants filed a brief in opposition on May 26, 2010. (Doc. 78.) On June 29, 2010, the court issued an order granted Plaintiff leave to file a second amended complaint. (Doc. 79.) Additionally, the court allowed Defendants to either file a new motion to dismiss, or proceed on the motion they filed on December 4, 2009.[5] (*Id.*) On July 9, 2010, Defendants filed a motion titled "Renewed Motion to Dismiss" asking that their December 4, 2009 motion be deemed to apply to Plaintiff's second amended complaint. (Doc. 81.) Thus, disposition of the motion is now appropriate.

**II.     Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211

---

[5] No new allegations were made against Defendants, nor were new facts material to these Defendants alleged.

(citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal

5

quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.** **Discussion**

Plaintiff brings this action as administratrix of the Estate of Clifford Finney pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights by subjecting him to cruel and unusual punishment through deliberate indifference to his serious medical needs. Plaintiff also asserts a state law claim of medical negligence against Dr. Polmueller and a state corporate liability claim against MHM.

Defendants argue that Plaintiff has failed to state a valid 42 U.S.C. § 1983 claim because there was no policy, practice or custom of MHM and because Plaintiff has failed to show deliberate indifference on the part of Dr. Polmueller. In addition, MHM argues that Plaintiff's corporate negligence claim must fail because this is a limited cause of action which does not extend beyond hospitals.

Neither party briefed Plaintiff's medical negligence claim; however, as will be more fully discussed below, because Plaintiff alleges nothing but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1950, the court will sua sponte dismiss this claim against Dr. Polmueller. The court will address each of these arguments in turn.

### A. <u>Section 1983</u>

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendant's conduct must have a causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980). Furthermore, for liability to attach, it must be shown that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). In this case, there is no dispute that Defendants were acting under color of state law. Therefore, only the deprivation of a right, privilege or immunity under the Constitution need be discussed.

In the Third Circuit, the deliberate indifference of a defendant which leads to a prisoner's suicide can constitute a valid Eighth Amendment claim under Section 1983 if a plaintiff establishes the following three elements: "(1) the detainee had a particular vulnerability to suicide, (2) the [defendant knew of and disregarded

that vulnerability],[6] and (3) those [persons] acted with reckless indifference to the detainee's particular vulnerability." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (citations omitted).

### 1. **Particular Vulnerability to Suicide**

Plaintiff has sufficiently pled that Finney had a particular vulnerability to suicide. Finney was in and out of the MHU or POC almost every month from June of 2007 to December of 2007, when he was released and subsequently committed suicide. He had tried to hurt himself with a razor and had a plan to hang himself with his bed sheets, a plan that was eventually successful. He continually refused to take his psychiatric medication and heard voices on and off which told him to harm himself. Finally, he was also put on fifteen minute observation when he was released from the POC for the final time on November 28, 2007, presumably because he posed a danger to himself. Taking all these facts in conjunction, it is apparent that Finney had a particular vulnerability to suicide.

---

[6] The Third Circuit in *Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3d Cir. 1991), articulated the second prong of the test as whether the defendant "knew or should have known" of the prisoner's vulnerability, *id.* at 1023, but that standard has been modified by the Supreme Court. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that a defendant cannot be found liable under the Eighth Amendment "unless the officer knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Thus, the *Colburn* test has been re-characterized to conform to the standard established by the Supreme Court. Other courts have likewise held that the plaintiff in a prison suicide case must show that "'defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.'" *Minix v. Canarecci*, No. 09-2001, 2010 WL 668893, at *4 (7th Cir., Feb. 26, 2010). *Accord, Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

### 2. Knew and Were Deliberately Indifferent to Detainee's Serious Medical Need

#### a. MHM

MHM is a private corporation that contracts with the state of Pennsylvania to provide mental health treatment for inmates at SCI-Smithfield. A private corporation contracting with a state cannot incur § 1983 liability by way of *respondeat superior*. *See Natalie v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003); *see also Monell v. Dep't of Sec. Servs.*, 436 U.S. 658, 691-94 (1978) (holding that a municipality may not be held liable under § 1983 on a theory of *respondeat superior*). In order to hold a private corporation liable under § 1983, a plaintiff must show that he suffered a constitutional deprivation resulting from an official corporate policy or custom. *See Natalie*, 318 F.3d at 583-84 (applying *Monell* to Prison Health Services- an MHM like corporation which provides medical care to the prisons). A policy is an official proclamation or edict, while a custom is "so permanent and well settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Phila*, 895 F.2d 1469 1480 (3d Cir. 1990) (citations omitted)).

In the instant case, Plaintiff alleges that MHM had a policy of only sending a psychiatrist to see inmates once a month despite many severe psychiatric complaints and problems. (Compl. ¶ 39.) Plaintiff also alleges facts that he was placed in the POC or MHU approximately one time per month, which could lead a reasonable fact finder to infer that this placement occurred in connection with the psychiatric visit. In addition, the complaint properly alleges that receiving a psychiatric evaluation once a month was not sufficient treatment for Finney's mental illness. Taking these allegations as true, at this stage in the litigation, Plaintiff has

pled that MHM had a policy or practice of not properly caring for inmates, knew of Finney's mental illness, and were deliberately indifferent to his serious medical needs, resulting in his eventual suicide. For these reasons, the motion will be denied as to Plaintiff's section 1983 claims against MHM.

### b. Dr. Polmueller

Plaintiff also asserts that Dr. Polmueller, the head of psychiatry for MHM, was deliberately indifferent to Finney's vulnerability to suicide. However, Plaintiff does not make any specific factual allegations with regard to Dr. Polmueller. Plaintiff merely recites threadbare allegations of fact against Dr. Polmueller generally reciting the elements of a cause of action, which is insufficient to allow a claim to proceed. *See Iqbal*, 129 S. Ct. at 1950. There is absolutely nothing in the complaint that would indicate Dr. Polmueller knew of Finney's vulnerability to suicide, disregarded that vulnerability, and acted in a reckless manner, as required by Section 1983. *Colburn*, 946 F.2d at 1023.

Furthermore, it does not appear from the face of the complaint that allowing Plaintiff to amend will alter the result. There is simply nothing in the complaint, besides a speckling of general allegations against all Defendants, which suggests that Dr. Polmueller knew of and was deliberately indifferent to Finney's medical needs. Furthermore, Plaintiff has already been permitted to amend her complaint twice to add facts pertaining to Dr. Polmueller and has failed to do so. For these reasons, Dr. Polmueller's motion to dismiss will be granted, and Plaintiff will not be permitted leave to amend as it appears from the face of the complaint that it would be futile.

### B. Medical Negligence

Plaintiff has also brought a state medical negligence claim against Dr. Polmueller. Although neither party briefed this issue, based on the allegations contained in the complaint, and the fact that Plaintiff has been twice granted leave to amend to add additional allegations, it is appropriate for the court to sua sponte dismiss the claim at this stage. Even if a party has not moved to dismiss a claim, "district courts may dismiss claims that do not state causes of action sua sponte." *Lada v. De. Cnty. Comm. Coll.*, 2009 WL 3217183, at *10 (E.D. Pa. 2009) (citing *Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 Fed. App'x 940, 943 (3d Cir. 2008); *Bryson v. Brand Insulation, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980)).

To state a claim for medical negligence, a plaintiff must establish all of the standard requirements for any negligence claim- 1) a duty recognized by law, 2) a breach of this duty, 3) a showing that the alleged conduct caused the injury, and 4) actual damages. *See Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. 2005). In addition, a plaintiff must show an "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient. . ." *Id.* (internal citations omitted).

Although Plaintiff states generally these elements with regard to Dr. Polmueller, there are absolutely no factual allegations with which to support this cause of action. Plaintiff must come forward with something more than bald allegations to support her claims. With regard to this Defendant, Plaintiff has done nothing but recite the elements of a cause of action without any factual support and

11

has twice been given leave to amend her complaint. As such, nothing in the complaint specifically, or even inferentially, shows Dr. Polmueller displayed an "unwarranted departure from generally accepted standards of medical practice resulting in injury" to Finney. Thus, Plaintiff has not pled facts which "permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 129 S. Ct. at 1950, and has not shown that Plaintiff is entitled to relief. As such, this count will be dismissed with prejudice.

### C. Corporate Liability

Plaintiff also brings a state law claim of corporate negligence against MHM. Defendants argue that corporate negligence is a very limited cause of action which can only be brought against hospitals, not private medical providers. The court disagrees.

A claim for corporate negligence arises, not from the actions of individuals, but instead because of the policies or actions of an institution. *Fox v. Horn*, 2000 WL 49374, at *7 (E.D. Pa., Jan. 21, 2000). Corporate negligence was first applied to hospitals in *Thompson v. Nason Hospital*, 591 A.2d 703 (Pa. 1991), wherein the court concluded that a hospital could be held liable if it breached any of the following: "(1) [the] duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) [the] duty to select and retain only competent physicians; (3) [the] duty to oversee all persons who practice medicine within its walls as to patient care; and (4) [the] duty to formulate, adopt and enforce adequate rules and policies to ensure quality care to the patients." *Thompson*, 591 A.2d at 707. In addition, a plaintiff must show the institution had actual or constructive knowledge of the policy which created the harm. *Fox*, 2000 WL 49374, at *7.

Finally, "the hospitals negligence must have been a substantial factor in bringing about the harm to the injured party." *Id.*

Defendants here argue that only hospitals can be held liable for corporate negligence, and not entities such as MHM. The Pennsylvania Supreme Court has not yet ruled on this issue. When a state's highest court has not yet ruled on an issue, and when there is no statutory guidance, federal district courts must attempt to predict how the highest state court would rule. *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991).

The court agrees with its sister court in the Eastern District and with other lower Pennsylvania Courts, that if the Pennsylvania Supreme Court were to address the issue, they would hold that private companies such as MHM can be held liable for corporate negligence. *See Fox*, 2000 WL 49374, at *7 (extending corporate liability to Correction Physician Services, a corporation which supplies medical care to state prisons); *Oven v. Pascucci*, 2000 WL 1876811, 46 Pa.D.&C.4th 506 (2000) (extending corporate liability to physician owned and operated optometry facility); *Shannon v. McNulty*, 718 A.2d 828 (Pa. Super. Ct. 1998) (expanding the holding in *Thompson* to HMOs). As the *Fox* court noted, one "factor that lead both the *Thompson* and *Shannon* courts to hold the institutions liable was the recognition that the patients in both cases had been constrained, in their choice of medical care options, by the entity sued." *Fox*, 2000 WL 49374, at *7. Furthermore, there is no difference between the services provided by a hospital and the services provided by health care institutions in prisons, except that a prisoner cannot choose which institution provides the services. As such, to conclude that the same duty of care is not owed to a prisoner as would be owed to

13

any other patient is illogical.  *See generally Patel v. Himalayan Int'l Inst. of Yoga Sci. & Philosophy*, Civ. No. 94-1118 (M.D. Pa., Sept. 30, 1996) (J. Vanaskie)(applying corporate negligence to a holistic health program).

Furthermore, Plaintiff has sufficiently pled this claim.  The court has already concluded that Plaintiff has properly pled that MHM was deliberately indifferent in violation of 42 U.S.C. § 1983, and for these same reasons, Plaintiff has properly pled the lesser standard of negligence.  Because the court agrees that a corporation which provides medical services must be held to the same duty of care as hospitals, and that Plaintiff has sufficiently pled the claim, Plaintiff's corporate negligence cause of action will remain and Defendants' motion to dismiss on this issue will be denied.

**This area intentionally left blank. Continues on page 15**

## IV. **Conclusion**

For the aforementioned reasons, Defendants' motion to dismiss will be granted in part and denied in part. Defendants' motion will be denied with regard to MHM as Plaintiff has properly pled that it was deliberately indifferent to Finney's serious medical need. Defendants' motion will be granted as to Dr. Polmueller as the complaint has failed to properly allege that Dr. Polmueller was either deliberately indifferent or negligent. Leave to amend with regard to Dr. Polmueller will be denied as amendment would be futile. Furthermore, Plaintiff's claim of corporate negligence will survive and Defendants' motion on this issue will be denied. An appropriate order will issue.

S/Sylvia H. Rambo
United States District Judge

Dated: July 23, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVELYN FINNEY as administrator of the estate of CLIFFORD FINNEY** | : : : | Civ. No. 4:09-1751 |
| **Plaintiff** | : : | |
| v. | : : | |
| **SUPERINTENDENT PAUL A. PALAKOVICH, et al.,** | : : : | J. Rambo |
| **Defendants** | : : : | |

## ORDER

In accordance with the accompanying memorandum of law, Defendants' motion to dismiss, (Docs. 25), and renewed motion to dismiss, (Doc. 81), will be **GRANTED in part** and **DENIED in part**:

    1) The motion is **DENIED** as to Defendant MHM,,

    2) The motion is **GRANTED** as to Defendant Dr. Eugene Polmueller.

    3) The court will sua sponte dismiss Plaintiff's medical negligence claim against Dr. Eugene Polmueller.

S/Sylvia H. Rambo
United States District Judge

Dated: July 23, 2010.