# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVELYN FINNEY,** as administrator of the estate of **CLIFFORD FINNEY,** | : Civ. No. 4:09-1751 : |
| **Plaintiff** | : |
| v. | : |
| **SUPERINTENDENT PAUL A. PALAKOVICH,** *et al.*, | : J. Rambo : |
| **Defendants** | : |

## **M E M O R A N D U M**

Before the court is Defendant Dr. Dominguez's motion to dismiss, (Doc. 85), Plaintiff's Second Amended Complaint, (Doc. 80). For the reason's that follow, the motion will be denied.

**I.**      **Background**

     **A.  Facts**[1]

At all times relevant to this complaint, Clifford Finney was an inmate at the State Correctional Institute- Smithfield ("SCI- Smithfield"), located in Huntington County, Pennsylvania.

In 2007, while at SCI- Rockview, Plaintiff was placed on suicide watch. He was subsequently transferred to SCI- Smithfield. In June of 2007, Finney threatened to harm himself and was placed in the Psychiatric Observation Cell ("POC") from June 14 to June 19, 2007. On June 30, Finney again threatened to

---

[1] All facts are taken from Plaintiff's Second Amended Complaint, and for purposes of this motion are accepted as true. In addition, the facts of this case have been fully set forth in this court's memorandum and order dated July 23, 2010, and only those facts as they pertain to Defendant Dominguez will be repeated here.

harm himself and was placed in the POC until July 6, 2007. On July 6, 2007, Finney was transferred to the Mental Health Unit ("MHU") at SCI-Rockview, where he was involuntarily committed until July 25, 2007.[2] At this time it was determined that Finney was severally mentally disabled.

From July 31 to August 20, 2007, Finney was again in the POC after using a razor to harm himself. Finney was placed in the POC from September 5 to September 11, 2007, for attempting to hang himself. On October 2, 2007, Finney was once again placed in the POC because he was hearing voices that told him to hang himself. This information was noted on a Psychiatric Review Team Meeting Summary Form, a meeting in which Dr. Dominguez participated.

On November 2, 2007, Finney's mother called a counselor at the prison to tell them she had received a note from her son which said, "If I'm found hanging dead the officers did it." (Compl. ¶ 47.) Between November 21 and November 28, 2007, Finney was again admitted to the POC because he was refusing his psychiatric pills, was hearing voices, and had a specific plan to hang himself with his bed sheets.

On November 28, 2007, Dr. Dominguez released Finney to the Restricted Housing Unit ("RHU"), despite Finney telling her that he was not ready to go and would hurt a correctional officer if released. Dr. Dominguez commented that she thought Finney was manipulative and he was released to the RHU. A different psychologist suggested Finney be put on fifteen minute observation while in the

---

[2] It is unclear from the Second Amended Complaint when exactly Finney was transferred between SCI- Smithfield and SCI- Rockview. However, the Complaint states that at all relevant times, the events leading up to Finney's suicide took place at SCI- Smithfield and for the purposes of this memorandum the court will accept this as true, and unless otherwise noted, all events happened at SCI- Smithfield.

2

RHU, which was done until December 1, 2007, when the guards took him off observation. After November 28, 2007, Finney was never again seen by a psychiatrist. Finney hung himself with a sheet in his cell on December 2, 2007.

Plaintiff alleges that Dr. Dominguez was deliberately indifferent to Finney's serious medical needs because she released him into the RHU before it was appropriate to do so, and because after Finney was released she failed to follow-up with any kind of psychiatric treatment.

**II.        Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only

on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.      Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging Dr. Dominguez violated Finney's Eighth and Fourteenth Amendment rights by subjecting him to cruel and unusual punishment through her deliberate indifference to his serious medical needs. Plaintiff also brings a state law claim for medical negligence.

   **A.      Section 1983**

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendant's conduct must have a causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980). Furthermore, for liability to attach, it must be shown that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). In this case, there is no dispute that Defendant was acting under color of state law. Therefore, only the deprivation of a right, privilege or immunity under the Constitution need be discussed.

In the Third Circuit, the deliberate indifference of a defendant which leads to a prisoner's suicide can constitute a valid Eighth Amendment claim under 42

5

U.S.C. § 1983 if a plaintiff establishes the following three elements: "(1) the detainee had a particular vulnerability to suicide, (2) the [defendant knew of and disregarded that vulnerability],[3] and (3) those [persons] acted with reckless indifference to the detainee's particular vulnerability." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (citations omitted).

Plaintiff has sufficiently pled that Finney had a particular vulnerability to suicide. Finney had been diagnosed with depression and suicidal tendencies. He requested psychiatric help on multiple occasions and even stated in these requests that he was afraid he was going to hurt himself. In addition, Finney cut himself with a razor and attempted to hang himself, both of which are highly indicative of a vulnerability to suicide. Furthermore he had a plan wherein he would use the sheets from his bed to hang himself, a plan he eventually was able to follow through with. Finney refused his psychiatric medication and was hearing voices which told him to hang himself. It seems apparent that Joseph Finney was concerned with the danger he posed to himself.

Plaintiff also sufficiently alleges that Dr. Dominguez knew of, and was deliberately indifferent, to Finney's serious medical needs. It is specifically alleged that on multiple occasions, Finney directly informed Dr. Dominguez that he was

---

[3] The Third Circuit in *Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3d Cir. 1991), articulated the second prong of the test as whether the defendant "knew or should have known" of the prisoner's vulnerability, *id.* at 1023, but that standard has been modified by the Supreme Court. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that a defendant cannot be found liable under the Eighth Amendment "unless the officer knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Thus, the *Colbur*n test has been re-characterized to conform to the standard established by the Supreme Court. Other courts have likewise held that the plaintiff in a prison suicide case must show that "'defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.'" *Minix v. Canarecci*, No. 09-2001, 2010 WL 668893, at *4 (7th Cir., Feb. 26, 2010). *Accord, Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

scared he was going to hurt himself, was feeling depressed, and had suicidal thoughts. Plaintiff alleges that by releasing Finney back into the RHU, despite Finney stating he would harm himself if placed in the RHU, Dr. Dominguez was deliberately indifferent to Finney's medical needs resulting in his eventual suicide. In addition, Dr. Dominguez was a member of the Psychiatric Review Team which admitted Finney into the POC in October because he was hearing voices who told him to hang himself.

These allegations are sufficient to permit Plaintiff's complaint to survive at this early stage in the litigation. Dr. Dominguez was aware of Finney's suicidal ideations. Dr. Dominguez was Finney's primary psychiatrist, she knew of his propensity towards self harm, that he was hearing voices, that he refused his

medications, and she was also aware that he was worried he would hurt himself if released back into the RHU. Despite this knowledge, Finney was transferred to the RHU and was not seen again by medical staff after November 28, 2001. These allegations raise a sufficient inference that Dr. Dominguez was aware of Finney's serious medical needs and was deliberately indifferent to those needs. As such, Defendant's motion will be denied.[4] An appropriate order will be issued.

s/Sylvia H. Rambo<br>United States District Judge

Dated: September 20, 2010.

---

[4] As the court finds that Plaintiff has sufficiently pled the heightened standard of deliberate indifference, it in turn finds that Plaintiff has sufficiently pled negligence, and Defendant's motion on this issue is likewise denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVELYN FINNEY, as administrator of the estate of CLIFFORD FINNEY,** | : Civ. No. 4:09-1751 |
| **Plaintiff** | : |
| **v.** | : |
| **SUPERINTENDENT PAUL A. PALAKOVICH,** *et al.*, | : J. Rambo |
| **Defendants** | : |

## **ORDER**

In accordance with the accompanying memorandum of law, it is hereby ordered that Defendant Dominguez's motion to dismiss, (Doc. 85), is **DENIED**.

                                                 s/Sylvia H. Rambo
                                                 United States District Judge

Dated: September 20, 2010.